IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-276-D

| | | |
|---|---|---|
| BRYAN WARDELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| PITT COUNTY, et al., | ) | |
| | ) | |
| Defendant. | ) | |

On May 14, 2024, Bryan Wardell ("Wardell" or "plaintiff") filed an action against Pitt County, North Carolina, the Pitt County Board of Commissioners ("Board of Commissioners"), Pitt County Manager Janis Gallagher ("Gallagher") in her individual capacity, and County Commissioner Christopher Nunnally ("Nunnally") in his individual capacity (collectively, "defendants") [D.E. 1]. Wardell alleges (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") against Pitt County; (2) race discrimination in violation of Title VII and 42 U.S.C. §§ 1981 and 1983 against Gallagher; (3) race discrimination in violation of 42 U.S.C. §§ 1981 and 1983 against Pitt County; (4) wrongful discharge in violation of North Carolina public policy against the Board of Commissioners; and (5) tortious interference with contract against Nunnally. [D.E. 1] ¶¶ 42–67. On June 3, 2024, Wardell amended his complaint [D.E. 14].

On June 24, 2024, defendants moved to dismiss Wardell's amended complaint [D.E. 16] and filed a memorandum in support [D.E. 17]. See Fed. R. Civ. P. 12(b)(1), (2), (6). That same day, defendants moved to strike, seal, and for entry of a protective order [D.E. 19]. On July 21, 2024, Wardell responded in opposition to defendants' motion to dismiss [D.E. 26] and defendants' motion to strike, seal, and for entry of a protective order [D.E. 27]. On August 14, 2024, defendants

replied [D.E. 35]. As explained below, the court grants defendants' motion to dismiss the amended complaint, dismisses plaintiff's amended complaint, and denies as moot defendants' motion to strike, seal, and for entry of a protective order.

I.

Wardell is a black man. See Am. Compl. [D.E. 14] ¶ 1. In August 2023, Wardell began working for Pitt County as the County Attorney. See id. Wardell's employment agreement did not specify an employment term. See id. at ¶ 16. The Board of Commissioners, however, conveyed to Wardell that it anticipated a long-term employment relationship. See id. As County Attorney, Wardell reported directly to County Manager Janis Gallagher, a white woman. See id. at ¶ 17. Gallagher participated in interviewing Wardell for his position. See id.

Wardell believes Gallagher and other county officials engaged in race dicrimination. See id. at ¶¶ 18–24. In support, Wardell alleges unnamed Pitt County officials promoted Gallagher to County Manager instead of Brian Barnett, a black man who worked as the Deputy County Manager and Chief Financial Officer. See id. at ¶ 19. Wardell also alleges a county commissioner once told Interim Director of Social Services Augustin Frazer, a black man, to "speak more clearly." Id. at ¶ 20. Wardell also alleges he once heard Gallagher make a racially charged comment towards Pitt County Sheriff Paula Dance, a black woman. See id. at ¶ 22.

Wardell also complains about how Gallagher managed him. Wardell alleges Gallagher "put limitations on the scope" of Wardell's role as County Attorney. Id. at ¶ 25. For example, Gallagher rejected Wardell's proposal that the county hire an assistant county attorney to lessen Wardell's workload. See id. Wardell wanted the County to hire a "well-regarded Black attorney" for the position. See id. Moreover, despite the County Attorney role usually being integrated into intergovernmental coordination and strategic planning, Gallagher declined to invite Wardell to an

annual meeting of Pitt County and Greenville City officials. Id. at ¶ 28. Furthermore, Gallagher tasked Wardell with cultivating relationships with prominent black community figures but not white community figures. See id. at ¶ 29. Wardell also raised concerns over two contracts Pitt County intended to enter. See id. ¶ 31. In each instance, Gallagher rejected Wardell's concerns and "steered the contract[s] to approval by the Board of Commissioners." Id.

In October 2023, Wardell told Nunnally that he believed a particular expenditure violated the North Carolina Constitution. See id. at ¶¶ 33–35. Nunnally pressured Wardell to change his position and later told another attorney that Wardell had misrepresented the scope of Pitt County's legal authority. See id. ¶¶ 36–39.

On November 20, 2023, Nunnally asked the Board of Commissioners to convene a closed-door session. See id. at ¶ 41. The Board of Commissioners did so and excluded Wardell and the clerks from this meeting. See id. During this meeting, Gallagher and Nunnally offered reasons for the Board of Commissioners to fire Wardell. See id. at ¶ 42. Specifically, Gallagher described Wardell as insubordinate, unqualified, and quarrelsome with other Pitt County officials. See id. Nunnally repeated his claim that Wardell had been dishonest about the scope of Pitt County's legal authority. See id. at ¶ 43. At the conclusion of the meeting, the Board of Commissioners voted to terminate Wardell's employment contract. See id. at ¶ 44.

On February 5, 2024, Wardell filed a charge with the Equal Opportunity Employment Commission ("EEOC") against Pitt County alleging retaliation and race discrimination. See [D.E. 14-1]. On April 8, 2024, the EEOC issued Wardell a right-to-sue notice. See [D.E. 14-2].

3

Case 5:24-cv-00276-D-RJ   Document 37   Filed 01/17/25   Page 3 of 17

II.

Wardell concedes that the court should dismiss his Title VII claim against Gallagher and his wrongful discharge claim against the Board of Commissioners. See [D.E. 26-1] 4–5. Accordingly, the court dismisses those claims.

The court considers defendants' motion to dismiss Wardell's three remaining claims under Rule 12(b)(6). Count one alleges Pitt County violated Title VII when the Board of Commissioners terminated Wardell's employment. See Am. Compl. ¶¶ 46–49. Count three alleges Pitt County violated 42 U.S.C. §§ 1981 and 1983 when the Board of Commissioners terminated Wardell's employment. See id. at ¶¶ 55–59. Count five alleges tortious interference with contract against Nunnally. See id. ¶¶ 65–71.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must

"nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Defendants move to dismiss Wardell's Title VII, section 1981, and section 1983 race discrimination claims. See [D.E. 17]. The court evaluates these claims under the same pleading standard. See, e.g., Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004); Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 543–45 (4th Cir. 2003); Henry v. Vaughn Indus., LLC, 450 F.

Supp. 3d 671, 678 n.2 (E.D.N.C. 2020); Wilson v. Nash Edgecombe Econ. Dev., Inc., No. 5:19-CV-322, 2020 WL 5594538, at *8 (E.D.N.C. Sept. 18, 2020) (unpublished).

A plaintiff need not plead a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973), to survive a motion to dismiss. See, e.g., Barbour v. Garland, 105 F.4th 579, 590 (4th Cir. 2024); Holloway v. Maryland, 32 F. 4th 293, 298 (4th Cir. 2022); Bing v. Bravo Sys., LLC, 959 F.3d 605, 616 (4th Cir. 2020); McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 585 (4th Cir. 2015). Although a race discrimination plaintiff need not plead a prima facie case to survive a motion to dismiss, a plaintiff must still "allege facts sufficient to state all the elements of [his] claim." Jordan v. Alt. Res. Corp., 458 F.3d 332, 346 (4th Cir. 2006) (cleaned up), overruled on other grounds by Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264 (4th Cir. 2015) (en banc); see Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510–15 (2002); McCleary-Evans, 780 F.3d at 585. In order to state a race discrimination claim under Title VII or section 1981, Wardell must plausibly allege that Pitt County discharged him because of his race. See 42 U.S.C. §§ 1981, 2000e-2(a)(1); McCleary-Evans, 780 F.3d at 585.

A.

First, defendants argue Wardell failed to "exhaust his administrative remedies" under Title VII because defendants "never received notice of any EEOC [d]iscrimination [c]harge." [D.E. 17] 6. Before a person may file a claim in court under Title VII, the person must file a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e–5(f)(1). An EEOC charge suffices "only if it is sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005) (quotation omitted); see Miles v. Dell, Inc., 429 F.3d 480, 491–92 (4th Cir. 2005). Moreover, the content of the EEOC charge determines the scope of plaintiff's right to maintain a Title VII claim in court. See, e.g.,

Hentosh v. Old Dominion Univ., 767 F.3d 413, 416–17 (4th Cir. 2014), abrogated on other grounds by Fort Bend Cnty. v. Davis, 587 U.S. 541 (2019); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132–33 (4th Cir. 2002). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996); see Sydnor v. Fairfax Cnty., 681 F.3d 591, 594 (4th Cir. 2012); Miles, 429 F.3d at 491–92; Bryant, 288 F.3d at 132–33. "Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009), abrogated on other grounds by Davis, 547 U.S. 541 (2019); see Bonds v. Leavitt, 629 F.3d 369, 379 (4th Cir. 2011). The same principle applies to a plaintiff who files an EEOC charge with respect to one adverse employment action (such as a failure to promote), but then seeks to expand the formal litigation claim to a separate adverse employment action (such as a termination). See Bonds, 629 F.3d at 379–80; Jones, 551 F.3d at 300; Miles, 429 F.3d at 491–92; Chacko, 429 F.3d at 509; Bryant, 288 F.3d at 132–33; Evans, 80 F.3d at 963. The rationale behind these principles concerning the scope of an EEOC charge relates to providing fair notice to an employer concerning a charge and permitting the EEOC to investigate and (if appropriate) to resolve the dispute without a lawsuit. See, e.g., Chacko, 429 F.3d at 508–09, 513; Miles, 429 F.3d at 491.

Wardell's EEOC charge includes a Title VII race-discrimination claim. See [D.E. 14-1] 2–4. The charge names Gallagher, the Board of Commissioners, and Pitt County. See id. The charge lists the earliest possible date of discrimination as "08/2023" and the latest as "11/22/2023." Id. at 2. Wardell filed the charge on February 5, 2024. See id. at 4. In the charge, Wardell

described Gallagher's conduct and the Board of Commissioners' decision to terminate Wardell's employment contract. See id. at 2–4. The EEOC charge provided sufficient notice to defendants of Wardell's Title VII race-discrimination claim. Wardell's amended complaint contains the conduct described in the EEOC charge. Thus, Wardell exhausted his administrative remedies before bringing his Title VII race-discrimination claim.

B.

Next, defendants argue Wardell failed to plausibly allege Gallagher "was principally responsible for his termination." [D.E. 35] 5. Specifically, defendants argue that Wardell seeks to hold Pitt County liable under a "cat's paw" theory of liability. In a "cat's paw case," a plaintiff seeks "to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." Staub v. Proctor Hosp., 562 U.S. 411, 415 (2011). "[I]f a supervisor performs an act motivated by [unlawful] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable . . . ." Id. at 422 (footnote omitted); see Smyth-Riding v. Sci. & Eng'g Servs., LLC, 699 F. App'x 146, 155 (4th Cir. 2017) (unpublished) (applying Staub to a Title VII claim); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 289–90 (4th Cir. 2004) (en banc), overruled in part on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009).

To proceed under the cat's paw theory, Wardell must plausibly allege (1) his supervisor harbored an unlawful animus, (2) his supervisor performed an act intended to cause an adverse employment action, and (3) Pitt County merely rubber-stamped his supervisor's recommendation. See, e.g., Ashanti v. City of Richmond Sch. Bd., No. 3:21CV494, 2023 WL 1110300, at *9 (E.D. Va. Jan. 30, 2023) (unpublished). Wardell's supervisor "cannot merely have substantial influence

on the ultimate decision or play a significant role in the decision; rather, a supervisor's discriminatory animus may support liability only if the supervisor was, in effect, principally responsible for, or the actual decisionmaker behind, the action." Lim v. Azar, 310 F. Supp. 3d 588, 602 (D. Md. 2018) (quotations omitted); see Staub, 562 U.S. at 422; Hill, 354 F.3d at 291; Ousley v. McDonald, 648 F. App'x 346, 348–49 (4th Cir. 2016) (per curiam) (unpublished); Traore v. Balt. Police Dep't, Civ. No. 22-793, 2023 WL 8600553, at *9 (D. Md. Dec. 12, 2023) (unpublished).

To support his cat's paw theory, Wardell alleges that "[u]pon information and belief, and inspired by their own unlawful motives, Gallagher and Nunnally had multiple conversations in November 2023 about the feasibility of the Board of Commissioners voting to terminate Wardell's [employment] contract." Am. Compl. ¶ 40. "Although a plaintiff may initially plead parts of his case 'upon information and belief,' his allegations may not be wholly conclusory." Kashdan v. George Mason Univ., 70 F.4th 694, 701 (4th Cir. 2023); see, e.g., Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Cap. LLC, 615 F. Supp. 3d 379, 384–85 (M.D.N.C. 2022) (collecting cases); Lemon v. Myers Bigel, P.A., No. 5:18-CV-200, 2019 WL 1117911, at *16–17 (E.D.N.C. Mar. 11, 2019) (unpublished); Carter v. Va. Dep't of Game & Inland Fisheries, No. 3:16CV661, 2018 WL 3614975, at *9 (E.D. Va. July 27, 2018) (unpublished).

Wardell offers no factual support justifying his "information and belief" that Gallagher and Nunnally conspired to have the Board of Commissioners terminate his employment contract because of his race. See Am. Compl. ¶ 40. Furthermore, Wardell concedes that Gallagher and Nunnally both articulated race neutral grounds for Wardell's termination at the executive meeting. See id. at ¶¶ 42–43. Moreover, Wardell fails to identify a single instance in which either Gallagher or Nunnally exhibited racially discriminatory behavior towards him. Wardell's amended

complaint only suggests race discrimination from innocuous interactions with Gallagher and Nunnally. See, e.g., Am. Compl. at ¶ 25 (alleging Gallagher declined to hire an assistant county attorney); id. at ¶ 28 (alleging Gallagher declined to invite Wardell to an annual meeting with City and County officials); id. at ¶ 31 (alleging Gallagher rejected Wardell's concerns regarding pending county contracts); id. at ¶¶ 33–35 (alleging Nunnally doubted Wardell's legal advice regarding a pending expenditure). Wardell's allegations are "far too speculative" because they lack "facts supporting the allegations." Kashdan, 70 F.4th at 702 (quotation omitted); see Iqbal, 556 U.S. at 678. Wardell fails to plausibly allege that Gallagher or Nunnally harbored any discriminatory animus that motivated Wardell's firing. Thus, the court grants defendants' motion to dismiss count one. See, e.g., Iqbal, 556 U.S. at 678; Traore, 2023 WL 8600553, at *9.

Alternatively, even if the court accepted Wardell's allegation that Gallagher and Nunnally allegedly provided negative job performance-related information to the Board of Commissioners with the intent to have Wardell fired, Wardell's race discrimination claim in count one still fails. To succeed on a cat's paw theory, Wardell must plausibly allege that "[Gallagher or Nunnally] w[ere], in effect, principally responsible for, or the actual decisionmaker behind" his firing. Lim, 310 F. Supp. 3d at 602 (quotations omitted). Wardell only alleges, however, that Gallagher sat as the Secretary of the Board for the executive meeting that culminated in his termination. See Am. Compl. ¶ 41. Wardell does not allege that either Gallagher or Nunnally were the actual decisionmakers behind the termination. Indeed, the Board of Commissioners voted to terminate Wardell's employment contract. Moreover, Wardell fails to plausibly allege that Gallagher and Nunnally provided false information to the Board of Commissioners or that the Board of Commissioners "rubber-stamped" Gallagher and Nunnally's alleged recommendation to terminate

Wardell's employment. Ashanti, 2023 WL 1110300, at *9.[1] At most, Wardell alleges Gallagher and Nunally provided some information to the Board of Commissioners, and the Board of Commissioners fired Wardell. This allegation does not suffice to plausibly allege Pitt County's liability under the cat's paw theory of liability. See, e.g., Traore, 2023 WL 8600553, at *9. Accordingly, the court grants defendants' motion to dismiss count one.

Alternatively, if a plaintiff lacks direct evidence of race discrimination (as in this case), a plaintiff can proceed under the McDonnell Douglas, 411 U.S. at 802–03, burden-shifting framework. See Hill, 354 F.3d at 284–85. The McDonnell Douglas framework consists of three steps: "(1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory." Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016). The McDonnell Douglas framework applies to failure to hire, termination, and retaliation claims under Title VII and section 1981. See, e.g., Williams v. Giant Food Inc., 370 F.3d 423, 430 (4th Cir. 2004); Beall v. Abbott Lab'ys, 130 F.3d 614, 619 (4th Cir. 1997), abrogated in part on other grounds by Gilliam v. S.C. Dep't of Juv. Just., 474 F.3d 134 (4th Cir. 2007).

To establish a prima facie case of race discrimination, Wardell must plausibly allege that (1) he was a member of a protected class, (2) he suffered an adverse employment action, (3) he was fulfilling his employer's legitimate expectations at the time of the adverse action, and (4) he

---

[1] Wardell states "the Commissioners effectively rubber-stamped the unlawfully motivated claims made by Gallagher and Nunnally." Id. at ¶ 44. The court rejects this threadbare conclusion. See Giarratano, 521 F.3d at 302 (quotation omitted); Iqbal, 556 U.S. at 678–79.

was treated differently than a similarly situated employee outside the protected class. See, e.g., Goode v. Cent. Va. Legal Aid Soc'y, Inc., 807 F.3d 619, 626 (4th Cir. 2015), abrogated in part on other grounds by Bing, 959 F.3d 605; White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004); Tahir v. Sessions, No. 5:16-CV-781, 2017 WL 1735158, at *4 (E.D.N.C. May 2, 2017) (unpublished), aff'd, 703 F. App'x 211 (4th Cir. 2017) (per curiam) (unpublished).

To establish a valid comparator, the plaintiff must show that he and the comparator were "similar in all relevant respects." Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (per curiam) (unpublished); see Smith v. Stratus Comput., Inc., 40 F.3d 11, 17 (1st Cir. 1994); Barski v. Cyberdata Techs., Inc., No. 8:17-CV-3593, 2020 WL 4471827, at *6 (D. Md. Aug. 4, 2020) (unpublished); Wilson v. City of Chesapeake, 290 F. Supp. 3d 444, 457 (E.D. Va. 2018), aff'd, 738 F. App'x 169 (4th Cir. 2018) (per curiam) (unpublished). The comparator must have "dealt with the same supervisor, . . . been subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992); see Haynes v. Waste Connections, Inc., 922 F.3d 219, 223–24 (4th Cir. 2019); Haywood, 387 F. App'x at 359; Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Wilson, 290 F. Supp. 3d at 457–58. However, "a comparison between similar employees will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances." Haynes, 922 F.3d at 223 (quotation omitted); see Cook, 988 F.2d at 511; Moore v. City of Charlotte, 754 F.2d 1100, 1107 (4th Cir. 1985). In the disciplinary context, "[t]he most important variables . . . and the most likely sources of different but nondiscriminatory treatment, are the nature of the offenses committed and the nature of the punishments imposed." Moore, 754 F.2d at 1105.

12

Case 5:24-cv-00276-D-RJ    Document 37    Filed 01/17/25    Page 12 of 17

Wardell fails to plausibly allege any valid comparator concerning the Board of Commissioners' decision to terminate his employment contract. Absent a valid comparator, Wardell's claim fails. See, e.g., McDonnell Douglas, 411 U.S. at 804; Cosby v. S.C. Prob., Parole & Pardon Servs., 93 F.4th 707, 714–17 (4th Cir. 2024); Spencer v. Va. State Univ., 919 F.3d 199, 207–08 (4th Cir. 2019); Haywood, 387 F. App'x at 359–60; Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir. 2008); Cook, 988 F.2d at 511; Moore, 754 F.2d at 1105–06; Matney v. Del Toro, No. 2:21-CV-2554, 2023 WL 6644591, at *15 (D.S.C. June 29, 2023) (unpublished), report and recommendation adopted by 2023 WL 6370658 (D.S.C. Sept. 30, 2023) (unpublished); Iskander v. Dep't of Navy, 116 F. Supp. 3d 669, 679–80 (E.D.N.C.), aff'd, 625 F. App'x 211 (4th Cir. 2015) (per curiam) (unpublished). Accordingly, the court grants defendants' motion to dismiss count one.

C.

As for count three, defendants argue Wardell's section 1981 and 1983 claims against Pitt County fail because Wardell "did not present any allegations of an unconstitutional policy, custom, or practice." [D.E. 35] 6. To state a section 1983 claim, a plaintiff must plausibly allege "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." Jenkins v. Medford, 119 F.3d 1156, 1159–60 (4th Cir. 1997) (en banc); West v. Atkins, 487 U.S. 42, 48 (1988); see Philips, 572 F.3d at 180. Wardell's amended complaint fails to identify the source of his allegedly impinged federal right. Nonetheless, Wardell's response in opposition states that defendants fired him because of his race in violation of section 1981. See [D.E. 26-1] 6–12. Therefore, the court analyzes Wardell's section 1983 claim as being premised on defendants' alleged violation of section 1981.

A claim under 42 U.S.C. § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989); see Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 & n.1 (4th Cir. 1995); Sasser v. City of Whiteville, No. 7:10-CV-95, 2010 WL 4809039, at *2 (E.D.N.C. Nov. 18, 2010) (unpublished); Roberson v. City of Goldsboro, 564 F. Supp. 2d 526, 528–29 (E.D.N.C. 2008). Under 42 U.S.C. § 1981(a), "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 prohibits racial discrimination in making or enforcing a contract and provides a remedy for a person who claims race discrimination in making or enforcing a contract or for retaliation in response to complaining about a violation of section 1981. See CBOCS W., Inc. v. Humphries, 553 U.S. 442, 445–46 (2008).

Pitt County, like other "municipalities and . . . local government units, [is] included among those persons to whom [Section] 1983 applies." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978); see Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cnty., 854 F. App'x 521, 529 (4th Cir. 2021). A court, however, cannot hold a municipal entity liable under section 1983 solely because the municipal entity employed a tortfeasor. Rather, when a municipal entity is sued—directly or through an official-capacity suit—the plaintiff must plausibly allege that a "policy or custom" attributable to the municipal entity caused the violation of the plaintiff's federally protected rights. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997); Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985); Monell, 436 U.S. at 690–94; King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016); Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469–70 (4th Cir. 2013); Carter v. Morris, 164

F.3d 215, 218–19 (4th Cir. 1999). A violation results from a municipal entity's "policy or custom" if the violation resulted from "a policy statement, ordinance, regulation, . . . [or] decision officially adopted and promulgated by that body's officers," or a governmental "custom." Monell, 436 U.S. at 690–91; see City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988).

Not every municipal official's action or inaction represents municipal policy. Rather, the inquiry focuses on whether the municipal official possessed final policymaking authority under state law concerning the action or inaction. See, e.g., McMillan v. Monroe Cnty., 520 U.S. 781, 785–86 (1997); Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986); Riddick v. Sch. Bd. of the City of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000). Furthermore, even if a section 1983 plaintiff can identify the requisite final policymaking authority under state law, a municipality is not liable simply because a section 1983 plaintiff "is able to identify conduct attributable to the municipality." Riddick, 238 F.3d at 524. Instead, a section 1983 "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Brown, 520 U.S. at 404 (emphasis omitted); see City of Canton v. Harris, 489 U.S. 378, 389–90 (1989); Riddick, 238 F.3d at 524. Hence, to avoid imposing respondeat superior liability on municipalities, a section 1983 plaintiff must show that "a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Brown, 520 U.S. at 411; see Harris, 489 U.S. at 392; Riddick, 238 F.3d at 524; Carter, 164 F.3d at 218–19.

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action" or inaction. Brown, 520 U.S. at 410. Moreover, even if a section 1983 plaintiff can show the requisite

culpability, a section 1983 plaintiff also must show "a direct causal link between the municipal action [or inaction] and the deprivation of federal rights." Id. at 404. Deliberate indifference and causation are separate requirements. Id.

Wardell fails to plausibly allege any unconstitutional policy, custom, or practice of Pitt County that led to his firing. Wardell only argues that Pitt County fired him because of Gallagher's acts as "Chief Operating Officer for the Pitt County government." Am. Compl. ¶ 17; see [D.E. 26-1] 9. Wardell, however, does not allege Gallagher possessed final policymaking authority. Assuming without deciding that Gallagher intended to get Wardell fired, Wardell fails to allege conduct attributable to Pitt County that would support a claim under either section 1981 or 1983. Moreover, Wardell concedes his amended complaint "does not include a due process theory." [D.E. 26-1] 4. Thus, Wardell fails to allege that Pitt County acted with "deliberate indifference to the risk that a violation of a particular constitutional or statutory right w[ould] follow the decision" to terminate Wardell's employment contract. Brown, 520 U.S. at 411; see Harris, 489 U.S. at 392; Riddick, 238 F.3d at 524; Carter, 164 F.3d at 218–19. Accordingly, the court grants defendants' motion to dismiss count three.

D.

Defendants did not move to dismiss Wardell's tortious interference claim against Nunnally. Having dismissed the claims over which Wardell alleged this court had original jurisdiction, the court declines to exercise supplement jurisdiction over Wardell's remaining state-law claim. See 28 U.S.C. § 1367(c)(3); Royal Canin U. S. A., Inc. v. Wullschleger, No. 23-677, 2025 WL 96212, at *5 (U.S. Jan. 15, 2025); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Eland Indus., Inc. v. Project Mgmt. Quality Servs., Inc., No. 7:18-CV-71, 2019 WL 1294646, at *4 (E.D.N.C. Mar. 20, 2019)

(unpublished). Thus, the court dismisses without prejudice count five. If Wardell wishes to pursue that claim, he may file an action in North Carolina state court.

III.

In sum, the court GRANTS defendants' motion to dismiss plaintiff's amended complaint and DISMISSES WITHOUT PREJUDICE plaintiff's Title VII race discrimination claim, section 1981 and 1983 race discrimination claim, and North Carolina tortious interference claim. The court DENIES AS MOOT defendants' motion to strike, seal, and for entry of a protective order [D.E. 19]. The clerk shall close the case.

SO ORDERED. This 17 day of January, 2025.

                                            JAMES C. DEVER III
                                            United States District Judge

17

Case 5:24-cv-00276-D-RJ    Document 37    Filed 01/17/25    Page 17 of 17